## Case No. 787.

BAKER et ux. v. WHITING et al.

[3 Sumn. 45.] [1]

Circuit Court, D. Maine.   May Term, 1839.

DEED—CONSTRUCTION —MAINTENANCE AND CHAMPERTY—EQUITY—TRUSTS — RIGHTS OF BENEFICIARY — CO-TENANT AS TRUSTEE — ADVERSE POSSESSION—EXTINGUISHMENT OF TRUST.

1. A deed of release for a valuable consideration, and intended to convey all the party's right and title, if it cannot take effect as a release, may be construed, in furtherance of the intention of the parties, as a bargain and sale, or other appropriate conveyance, ut res magis valeat, quam pereat.

2. The old cases with regard to maintenance and champerty go farther than would now be sustained in courts of equity.

3. A cestui que trust may lawfully dispose of his trust estate, notwithstanding his title is contested by the trustee. Neither the common law, with regard to maintenance and champerty, nor the statute of 32 Hen. VIII. c. 9, made in aid thereof, apply to a trust estate actually existing, either by the acts of the parties, or by construction of law.

[Cited in Wyman v. Babcock, Case No. 18,-113.]

4. There can be no disseisin of a trust, though the exercise of an adverse possession for a great length of time may in equity bar or extinguish it.

[Cited in Hunter v. Marlboro, Case No. 6,-908.]

5. A purchase by an agent will be deemed, by a court of equity, a purchase for his principals, unless the agent has openly and notoriously, and with full notice to his principals, discharged himself from his agency.

6. A tenant in common cannot, without the consent of his co-tenants, grant permits to persons to go on the premises owned in common, and to cut down timber thereon for their own use, for a compensation, called, in the language of the country, "stumpage."

---

[1] [Reported by Hon. Charles Sumner.]

7. All acts, done by one tenant in common, are to be done for the interest of all the co-tenants, and in conformity to their rights, until an adverse claim is notoriously set up and established by competent proofs.

8. Stimpson gave a deed of release of his interest, as a tenant in common, in certain premises to Baker; at the time of this conveyance, Whiting was in possession and seisin of the premises, claiming them in his own right, by virtue of a purchase under a tax sale. Whiting was one of the tenants in common of the premises, and was the agent of Stimpson and the other proprietors. *Held*, that the purchase of Whiting must be deemed a trust for the benefit of Stimpson and his grantee, Baker, to the extent of their interests; that he ought to be decreed to convey the legal title to the premises, after being satisfied of all just claims, which he had against them for taxes, for the purchase money laid out in the tax-sale, for his expenditures and improvements upon them, and also for his reasonable services as agent in the premises, deducting all sums of money received by him in the premises for "stumpage" or otherwise.

[See Curts v. Cisna, Case No. 3,507; Schedda v. Sawyer, Id. 12,443; Rothwell v. Dewees, 2 Black, (67 U. S.) 617.]

9. In equity, length of time is no bar to a trust clearly established; provided no circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust, and no open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, which requires them to act, as upon an adverse title.

[Cited in James v. Atlantic Delaine Co., Case No. 7,177; Lakin v. Sierra Buttes Gold Min. Co., 25 Fed. 345.]

[10. Time begins to run against a trust as soon as it is openly disavowed by the trustee, insisting on an adverse right and interest which is clearly and unequivocally made known to the cestui que trust.]

[Cited in U. S. v. Taylor, 104 U. S. 222; Speidel v. Henrici, 120 U. S. 386, 7 Sup. Ct. 611; Naddo v. Bardon, 47 Fed. 790.]

Bill in equity [by George Baker and wife against Timothy Whiting and others] and cross bill. The bill stated, that on or about the 10th November, 1800, John Peck, by deed of bargain and sale conveyed to Jacob Tidd, father of Emily, the wife of George Baker, and to Samuel Stimpson seven thousand and twenty-three acres of land situate in township No. 12, now Whiting, in the county of Washington, whereby the said Tidd and Stimpson became seised of an absolute estate in the said seven thousand and twenty-three acres of land in fee simple as tenants in common thereof, and in common with other owners of the said township. Afterwards Tidd and Stimpson employed the defendant, Whiting, as their agent, to take care of the said land and prevent any trespass thereon, and to pay all taxes lawfully assessed on the same, or give notice thereof to his constituents, which the said Whiting undertook to do. Jacob Tidd died in the year 1821, and thereupon one seventh of his interest descended to his daughter Emily, who became seised thereof. Another undivided seventh part descended to her brother William Dawes Tidd, son of the said Jacob, who became seised thereof, and afterwards died, so seised, unmarried and

without issue, whereby one sixth part of the said undivided share of the said W. D. Tidd, descended and came to the said Emily. Samuel Stimpson afterwards conveyed all his interest to George Baker.

The bill charged a combination between Charles Peavy, Timothy Whiting, Timothy Whiting, Jr., M. J. Talbot and Samuel A. Morse and others, persons unknown, and that they entered into the said tract and disseised the complainants, under pretence, that the said lands were legally assessed for public taxes and duly advertised and sold to the said Whiting, Sen., as the highest bidder, and that the said owners neglected to redeem the same according to the laws of Maine, whereby the said Whiting, Sen., lawfully became the absolute owner thereof in fee simple; whereas the contrary is true, and that no such tax was lawfully assessed, nor was any sale thereof lawfully made. That Whiting fraudulently kept the complainants and the said Tidd and Stimpson, wholly ignorant and uninformed of the said pretended assessment and sale, that he might seem to acquire some legal title to the said seven thousand and twenty-three acres, through their neglect to redeem the same. That the said Whiting, Sen., after his pretended purchase, sold the said lands, absolutely and in good faith, and for a valuable consideration, to the said Morse, Talbot and Whiting, Jr., or some of them. The said grantees petitioned for partition as tenants in common, with persons unknown, and that, on notice given and proved, and proceedings had, partition was made by commissioners appointed for that purpose, and lands were set off in severalty to Morse, Talbot, and Whiting, Jr.

The bill alleged further, that Whiting, Sen., under some pretence of right had cut down, converted to his own use, and received pay for large quantities of timber, without license or consent of the complainants, or persons under whom they claim, and that during the past winter, and up to the time of the filing of the bill, the said Peavy and others had entered upon the said lands and cut down a large number of timber trees thereon, which they were about to remove and convert into lumber, to the great and irreparable injury of the complainants.

The bill concluded with a prayer, that the defendants might discover and exhibit any and all letters, agreements, memorandums, original deeds and paper writings in their possession or control, relating to the matters stated and charged; that they might account for the value of the timber and trees, which were upon the said lands, and cut down by them or by Whiting, Sen.; that they might be restrained from cutting and removing the said timber, and that they might be required to release their pretended titles to the premises, and for further and other relief.

The answer of Timothy Whiting, admitted the title to have been originally in Emily Baker, as stated; but alleged, that it was

defeated by a tax-sale, on the 7th August, 1821, and further denied all agency for the complainants, or for Tidd or Stimpson, or that he ever undertook to act as agent for them. The answer stated, that the defendant, on 27th August, 1821, purchased seventeen thousand five hundred acres, lying in common with the residue of the said lands in the said plantation, at an auction sale of the same, by Enoch Hill, collector of taxes for that year, the same having been sold for the non-payment of certain taxes assessed on the said lands, being the unimproved lands of non-resident proprietors thereof, for the year 1821; the said taxes amounting to $357.85. The sale was advertised, previously, in the Eastern Argus, printed at Portland, and in the Eastport Sentinel, and notice thereof posted in the said plantation. The said collector executed and delivered a deed of the said land to the defendant on the 6th of November, 1821, to hold in fee simple, but subject to the legal right of redemption; but which was never redeemed, and so the defendant became the absolute owner thereof in fee. Whiting further alleged, that he owned several thousand acres in the town of Whiting, prior to August 27th, 1821, but had no means of knowing the exact quantity, and that, therefore, it became necessary for him to convey to Whiting, Jr., Morse and Talbot, in order to have his interest properly ascertained, and set off in severalty; that many years prior to the filing of the bill, Whiting, Jr., Morse and Talbot, had conveyed their said several parcels to the defendant, whereby the legal title became vested in him, and during the past winter and to the time of the filing of the bill, he entered upon lands owned by him in severalty, and no other, and cut down a large number of timber trees, as charged in the said bill, as he had a right to do. Whiting further alleged, that the deed mentioned in the bill, which was given by the said Samuel Stimpson to the said George Baker, was given in December, 1835, or January or February, 1836, at which time the land mentioned in the said deed was in the possession of the defendant or his assigns; the evidence of whose titles was all on record, and the said lands were then claimed to be the defendant's or his assigns', all which facts were well known to said Baker at the time he made his said purchase of the said Stimpson.

Answers were also put in by Samuel A. Morse, M. J. Talbot, and Charles Peavy, wherein they stated the origin of their interests in the estates mentioned in the original bill. A cross-bill was also filed by Timothy Whiting, Samuel A. Morse, and M. J. Talbot, charging a combination to purchase up stale or pretended titles, and praying for a dismissal of the original bill, a perpetual injunction in relation to the premises, and for further relief. The answer to the cross-bill denied all combination to purchase up stale or pretended titles, and concluded with a

prayer for an injunction against Whiting to restrain him from cutting and carrying away timber from the premises, or permitting timber to be cut and carried away.

Hobbs, Fessenden, and Deblois, for plaintiffs.

Daveis and Mellen, for defendants.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. Several objections have been taken to the present bill at the hearing, some of which involve matters of fact, and others matters of law. I will briefly state the opinion of the court upon all the points suggested at the argument.

The first question is, whether the plaintiffs have shown any title whatsoever to maintain the present bill; or, in other words, whether they have shown any interest or estate in the land in controversy. The bill states, that Baker and his wife are entitled in her right to one sixth of one undivided seventh part of the premises; and that Baker, in his own right, is entitled to one moiety of the premises, in virtue of his purchase and assignment from Stimpson, who was owner thereof. Mrs. Baker inherited from her father, Jacob Tidd, one seventh of the premises; and by the death of her brother, William Dawes Tidd, one seventh of one seventh; he, dying after he came of age, and his mother being entitled to share with his brothers and sisters. By the deed of Baker and his wife to Howe, in December, 1835, they released their right and title to four sixth parts of the premises; and the answer to the cross bill insists, that she never intended by that deed to part with the share derived from her brother. Be this as it may, it is very clear, that she has not conveyed it by this deed, since her right is still retained to the remaining two-sixths of the premises. So that Baker and his wife are fully entitled to the whole share derived from her brother. The bill is, therefore, maintainable by the plaintiffs in her right, so far as this interest goes.

As to the title derived by Baker by the deed of release from Stimpson of one moiety of the premises, as the release was for a valuable consideration, and meant to convey all Stimpson's right and title, if it cannot take effect as a release, it may be construed in furtherance of the intention of the parties, as a bargain and sale, or other appropriate conveyance, ut res magis valeat, quam pereat. This doctrine I take to be now well settled at law. But in equity there can be no question, that it is fully established. The case of Doungsworth v. Blair, 1 Keen, 801, is directly in point, if, indeed, so plain a principle required any authority to support it. In that case it was held, that an indenture, which was intended to be an indenture of release, but could not operate as such, might, for the purpose of carrying into effect the real intention of the parties, if there was

a proper consideration, be construed as a covenant to stand seised. The case of a valuable consideration is far stronger. See, also, 1 Story, Eq. Jur. § 168.

The main objection, however, taken to the operation of this deed, is, that at the time of this conveyance by Stimpson to Baker, the defendant was in full possession and seisin of the premises, claiming them in his own right, and of course, that Stimpson was then disseised, and the conveyance to Baker was void under the operation of the common law relative to maintenance and champerty, and the statute of 32 Hen. VIII. c. 9, made in aid thereof. This statute prohibits, under penalties, the buying or selling of any pretended right or title to land, unless the vendor is in actual possession of the land, or of the reversion or remainder. The object of the statute, as well as of the common law, was, doubtless, to prevent the buying up of controverted legal titles, which the owner did not think it worth his while to pursue, upon mere speculation; so that in fact, it might properly be deemed the mere purchase of a law-suit. 4 Bl. Comm. 135, 136; 1 Hawk. P. C. c. 83, §§ 1–20; Id. c. 84, §§ 1–20; Id. c. 86, §§ 1, 4–17. The old cases upon this subject have gone a great way, farther, indeed, than would now be sustained in courts of equity, which have broken in upon some of the doctrines established thereby. But be this as it may, neither the common law, nor the statute, applies to a trust estate actually existing, either by the acts of the parties, or by construction of law. Thus, a cestui que trust may lawfully dispose of his trust estate, notwithstanding his title is contested by the trustee; for the latter can never disseize the former of the trust estate; but so long as it continues, the possession of the trustee is treated, at least in a court of equity, as the possession of the cestui que trust. There can be no disseisin of a trust; although the exercise of an adverse possession for a great length of time may, in equity, bar or extinguish the trust. The whole question in the present case turns upon this; whether the defendant, Whiting, at the time of his purchase of the premises at the sale for taxes, in August, 1821, was the agent of the heirs of Jacob Tidd, of Stimpson, and of other proprietors of their undivided shares in the premises. If he was, then, upon the acknowledged principles of courts of equity he, as an agent, could not become a purchaser at the sale for himself; but his purchase must be deemed a purchase for his principals. It matters not, whether, in such a case, the defendant intended to purchase for himself, and on his own account, or not. For courts of equity will not tolerate any agent in acts of this sort, since they operate as a virtual fraud upon the rights and interests of his principals, which he is bound to protect. He was bound, as their agent for the premises, to give them notice of the intended sale, and to save the property from any sacrifice; and

until he had openly, and notoriously, and after full notice to the principals, discharged himself from his agency, he could not be permitted, in a court of equity, to become a purchaser at the sale. If, indeed, as there is much reason to believe, at the time of the sale, he had funds of his principals in his own hands, sufficient to meet the taxes; and a fortiori, if he endeavored to dissuade, or to prevent other persons from becoming bidders at the sale, as some of the evidence states, his conduct was, supposing him to be agent, still more reprehensible. The validity of the conveyance, then, from Stimpson to Baker, depends upon the fact, whether the defendant, Whiting, was or was not the agent and mere trustee of the parties; and whether, if agent, eo instanti, that the conveyance under the tax sale was made to him, the law did not attach the trust to the lands in his hands. If it did, then the conveyance of Stimpson to Baker was valid. If it did not, then it was void, as falling within the reach of the doctrines respecting maintenance, champerty, and pretended titles. Those doctrines do not apply to trusts created in privity of estate, but to adverse and independent titles between strangers. It is quite a mistake to suppose, that a controverted trust may not be assigned by the owner, when it is clearly and unequivocally attached to property. If a contract is made for the sale of lands, the contractee may sell and assign the whole, or a part, or make a binding subcontract respecting the same, whether there be a controversy respecting the specific performance of the original contract, or not. The case of Wood v. Griffith, 1 Swanst. 55, 56, is fully in point upon this doctrine, even when the assignment or sale is made during the pendency of a suit for a specific performance.[2] I repeat it, therefore, that the whole question, whether the deed from Stimpson to Baker was a valid conveyance or not, depends upon the point, whether, at the time, the defendant was actually or constructively a trustee of the premises for Stimpson.

And, in my judgment, notwithstanding the stern denials of the answer of Whiting, the fact of the agency of the defendant, at and before the time of the tax sale, for Stimpson, as well as for the heirs of Jacob Tidd, and other proprietors, is completely established by evidence altogether unexceptionable and conclusive. It is proved by acts done, which in no other way could be lawful, or indeed could be fairly accounted for. And it is also proved by written documents and receipts, which admit of no reasonable doubt. It appears, that as long ago as 1815 the defendant, Whiting, became a purchaser,

[2] See, also, 2 Story, Eq. Jur. §§ 1048–1051, 1053, 1054; Harrington v. Long, 2 Mylne & K. 590; Hartley v. Russell, 2 Sim. & S. 244. In the case of Prosser v. Edmonds, 1 Younge & C. 497, 498, there was no trust, but a mere naked right to set aside a conveyance for fraud, which distinguishes it from the present case.

and, as such, a tenant in common with the other proprietors of these undivided lands. He undertook, at various times, between 1815, and the sale in 1821, as well as afterwards, to grant written permits to different persons to go on the premises, and to cut down timber thereon for their own use, for a compensation called, in the expressive language of the country, "stumpage"; and, for this compensation, he also at several times gave receipts. Now, as a tenant in common, he had no authority whatsoever, without the consent, express or implied, of his co-tenants to grant any such permits, or to authorize any such acts. They are expressly prohibited, not only by the common law, but by the positive penalties of the statute of the state upon this subject. These penalties are severe; and the law will never presume, that a party does an unlawful act, unless it is shown by some competent evidence. The presumption in the absence of counteracting evidence is, that it is done under lawful authority, if it might have been so done. A court of equity would, a fortiori, indulge in such a presumption in favor of a party, who is a tenant in common, that he acted as a common agent, for the common benefit of all the proprietors; since in that way he may promote the true interests of all. Indeed, all acts, done by one tenant in common, are presumed to be done for the interest of all the cotenants, and in conformity to their rights, until an adverse claim is notoriously set up, and established by competent proofs. In the present case, upon this sole ground, in the absence of all counter proofs, the acts of the defendant, Whiting, up to the tax sale in 1821, ought to be deemed to be done by him as a tenant in common, acting for the benefit of all, and therefore acquiesced in by all.

But the case does not rest upon this sole ground, either of fact or presumption. The very permits and receipts afford satisfactory evidence, that the defendant, Whiting, did not act solely for himself; but that he acted for the other proprietors. It is true, that in one case only does he give a receipt in terms for the proprietors of the undivided lands for stumpage. But in all the other cases, and they are numerous, his receipts always purport to be "for the undivided lands," and never, in any instance, purport to be on his own individual account. This is very strong evidence to establish the real nature of the transactions. If he was acting for himself alone, his silence on this point is wholly unaccountable. If he was acting for himself and other proprietors, then the language is clear and intelligible, and has its appropriate effect. In this way too the acquiescence of his co-tenants would be easily explained. In any other view it would be utterly unaccountable. I have, therefore, no doubt whatever on this point, that the defendant, Whiting, was agent for Jacob Tidd during his life (and he died in March, 1821), and afterwards for his heirs (some of whom were, as it is said,

at that time infants), as well as for Stimpson and other proprietors. If so, the purchase by him, at the tax sale, became immediately by operation of the principles of a court of equity a trust for the benefit of the principals.

Then, it is said, that the plaintiffs are barred from any right in equity by the mere lapse of time. It does not appear what were the respective ages of the heirs of Tidd at the time of the tax sale, nor what was the age of Stimpson; and all of them were at that time (as it should seem) citizens of another state, and of course came within the common exceptions of the statute of limitations. But, what is more particularly applicable to the present case, twenty years had not elapsed before the filing of the bill; and, I apprehend, that, in the case of a trust of lands, nothing short of the statute period, which would bar a legal estate or right of entry, would be permitted to operate in equity, as a bar of the equitable estate. This doctrine seems to be admitted by the authorities ever since the great case of Cholmondeley v. Clinton, 2 Jac. & W. 1, and it has been repeatedly acted upon in the supreme court of the United States.[3] Indeed, in the case of Prevost v. Gratz, 6 Wheat. [19 U. S.] 481, it was broadly laid down, that, in equity, length of time is no bar to a trust clearly established, and that, in cases where fraud is imputed and proved, length of time ought not, upon principles of eternal justice, to be admitted to repel relief. This doctrine is regularly true, when it is received with the proper accompanying limitations; that no circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust; and no open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, which requires them to act, as upon an asserted adverse title.

Upon the whole, I am of opinion, that the purchase by the defendant must be deemed to be a trust for the benefit of the plaintiffs to the extent of their interest; that the defendant ought to be decreed to convey the legal title to them, after being satisfied of all just claims, which he has against the lands for taxes, for purchase-money paid at the tax sale, for his expenditures and improvements upon the land, and also for his reasonable services as agent in the premises, deducting all sums of money received by him in the premises for stumpage, or otherwise. And it ought to be referred to a master to take an account in the premises, and to make report thereof to the court, according to the principles of this decree.

As to the other defendants, Peavy, Morse, and Talbot, no case has been made out against them of any fraud or misconduct, calling for the interposition of the court. The

[3] See the cases cited in 2 Story, Eq. Jur. §§ 1520–1522; and Story, Eq. Pl. §§ 503, 751–759; and Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 168.

bill will, therefore, be dismissed against them, with costs. But the plaintiffs are entitled to costs, upon the cross bill, against the parties thereto, namely, Whiting, Morse, and Talbot, and may set them off pro tanto against the costs of the original bill decreed to Morse and Talbot.

The district judge concurs in this opinion, and a decretal order will be drawn up accordingly.

[NOTE. For opinion denying a petition by defendant, Whiting, for a rehearing, see Baker v. Whiting, Case No. 786.]