[Civ. No. 659. Third Appellate District.—November 22, 1909.]

## A. CIAPUSCI and M. PEDOTTI, Appellants, v. J. ROSS CLARK and EMPIRE CONSTRUCTION COMPANY, a Corporation, Respondents.

ACTION TO QUIET TITLE—AGREED STATEMENT OF FACTS—TITLE OF DEFENDANT TO TIMBER—PROPER DECREE.—In an action by the owners of land to quiet title thereto, where an agreed statement of facts established, as matter of law, that under an express contract between plaintiff's predecessor in interest and defendant's predecessor in interest the latter became vested by purchase from the former with an indefeasible title to all of the timber standing upon four hundred acres thereof, particularly described in such instrument, the court properly adjudged that defendant is the owner of all the timber standing upon the tract described, with the right to remove the same in the manner therein specified, and by its judgment quieted plaintiff's title subject to such right.

ID.—CONDITION AS TO EXAMINATION OF TITLE—DEPOSIT—FULL PAYMENT—EXECUTORY AND EXECUTED CONTRACT.—Though a deposit with condition as to an examination of the title to the land proving satisfactory made the contract executory, yet, upon full payment of the entire purchase money of $8,000, being at the rate of $20 per acre for four hundred acres, which was satisfactory to the seller and buyers, and which was paid in full for all the timber growing upon the tract described, it became an executed sale.

ID.—USE OF WORD "STUMPAGE" IN CONTRACT.—The use of the word "stumpage" in the contract does not warrant an inference that the sale was less than of the entire standing timber as it stood, or that the price paid is only of timber as cut. The word "stumpage" is defined to mean timber standing in the tree, with the right vested in the owner of the standing timber, who has purchased the same as standing, to cut and remove the same from the land. It cannot control an express statement in the contract, "I, . . . have sold . . . a certain lot of timber growing on my land," particularly described.

ID.—TIME OF REMOVAL—SMALL RENTAL AFTER FOUR YEARS—EXTENSION OF RIGHT FOR TEN YEARS—FORFEITURE NOT PROVIDED.—Where the price of the standing timber was fully paid, and the contract contemplated that the right of removal might last during ten years, and provided that after four years a small rental of $5 per year might be paid until removal within a period of ten years, without inserting any provision of forfeiture of the timber purchased, or of the sum of $8,000 paid therefor, the small rental provided for need be paid only when demanded, and the mere neglect to pay it without demand cannot work a loss of the right to the standing timber paid for in full.

ID.—FORFEITURES NOT FAVORED.—The law does not favor forfeitures, and will not enforce them in the absence of clearly stated conditions of forfeiture.

ID.—TIME LIMIT CONSTRUED AS A COVENANT.—In the absence of an express provision for a forfeiture, a time limit is to be construed as a covenant, and not a condition upon which to base a forfeiture.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

McNab & Hirsch, for Appellants.

Olney, Pringle & Mannon, for Respondents.

CHIPMAN, P. J.—This is an action to quiet title to certain land in Mendocino county.  The cause was tried upon an agreed statement of facts from which it appeared:

That on May 20, 1903, C. D. Robinson was the owner of the land in question; on that day he executed and delivered to Bender Brothers, engaged in the business of buying and selling timber and timber lands, an instrument in writing, hereinafter set out; on September 12, 1903, Bender Brothers sold, assigned and transferred all their rights under said instrument to defendant, J. Ross Clark, by assignment written on said instrument, which, with said assignment was, on September 21, 1903, duly recorded in the office of the county recorder of said county; on October 8, 1904, said Clark "sold, assigned, granted and conveyed to the defendant Empire Construction Company, a corporation, all his right, title and interest in said instrument and in and to the land and timber therein set out, by an assignment in writing endorsed on said instrument," which was duly recorded after the commencement of the action.  This instrument, with the assignments indorsed, is as follows:

"Gualala, May 20, 1903.

"I, C. D. Robinson, of Gualala, Mend. Co., Calif., have this day sold to Bender Bros., of San Francisco, Calif., a certain lot of timber growing on my land for the sum of Eight Thousand Dollars ($8,000.00) United States Gold Coin, as stumpage for said timber being located on the northwestern portion of my ranch, and more particularly described as

follows, all the timber growing on (describing the land), comprising about four hundred acres, said Bender Brothers to have the right to cut all the timber growing on said land, as above described, with the exception of the Bull Pine Timber growing next to the County Road, and I, C. D. Robinson, reserve the field fenced in near the southwest corner of said land, said Bender Brothers are to have the right to make all necessary roads for hauling said timber, also privilege of building cook houses and sleeping apartments for working men, also stables and corrals for teams, but no buildings for any other purpose whatever, and they shall not allow any other business to be carried on on the above described premises. And I, C. D. Robinson, reserve the right to go on said land at any time for the purpose of prospecting for mineral water or oil, or any other minerals, and the said Bender Brothers shall have four years to take said timber off of said land, with privilege of a longer time by paying the sum of Five Dollars per year rent in advance, for a time not to exceed Ten years· from date of this agreement. And it is further agreed that as soon as the timber is all off they shall peacefully give up all rights and possessions to the above described premises.

· "I, C. D. Robinson, agree to let Bender Bros. have Ten days to examine the timber and it is agreed at the end of Ten days if they want the timber they will pay Five Hundred Dollars, and at the end of Thirty days, if the titles are all right, they are to pay the balance due on the Eight Thousand Dollars. If title is good and the balance is not paid, the said Bender Bros. lose the aforesaid mentioned Five Hundred Dollars. If title proves to be no good, I, C. D. Robinson, will pay the said Five Hundred Dollars back to Bender Bros.

"I, C. D. Robinson, guarantee all rights of way to the County Road from any part of the above mentioned land, and it is further agreed that Bender Bros. shall have exclusive rights for any and all roads that are made over said land, or to be made on said land.

"(Signed) C. D. ROBINSON."

(Witnesses to the signatures omitted.)

"San Francisco, Sept. 12th,· 1903.

"For and in consideration of the sum of $10.00 to us in hand paid, we hereby sell, assign and set over to J. Ross

Clark, of Los Angeles, California, all our rights covered by the foregoing bill of sale.

"(Signed)  BENDER BROS.,
"By GEO. L. BENDER."

(Duly acknowledged so as to entitle this to be recorded.)

"For value received, I, J. Ross Clark, the grantee of Bender Bros. in the within agreement, do hereby grant and convey unto The Empire Construction Company, a corporation, all my right, title and interest in and to the within contract, and in and to the land in the contract described and the timber growing thereon. Reference is hereby made to the description contained in the within contract and to the record thereof in Liber 94 of Deeds, page 128 of the records of Mendocino County, State of California.

"In Witness Whereof, I have hereunto set my hand this 8th day of October, 1904.

"(Signed)  J. ROSS CLARK.

"Witness:
"(Signed)  WARREN OLNEY."

(Duly acknowledged so as to entitle this to be recorded.)

The consideration of $8,000 was paid by Bender Brothers to Robinson, in accordance with the terms of said instrument and thereupon they entered upon the land "and removed a large portion of the timber set out in the foregoing writing executed by said C. D. Robinson," and during his lifetime and while he was the owner of the land; no timber has been cut or removed since January 1, 1906; Robinson had knowledge of the removal of the timber under claim of right by Bender Brothers, and made no objection thereto; defendant the Empire Construction Company is the owner of said instrument and has succeeded to and is owner of all the rights existing under it; on September 8, 1906, Robinson conveyed the land to his daughter, Mrs. Jacobs, the deed was duly recorded (date not given), and on February 2, 1907, she conveyed the land to plaintiffs; the deed was duly recorded (date not given), and plaintiffs are now the owners of the land, "subject to any and all right in said lands in favor of the Empire Construction Company which may now exist by virtue of said instrument made and entered into by Robinson with Bender Bros.''; said Mrs. Jacobs and plaintiffs acquired said real property with full knowledge of the execution and delivery to Bender Brothers of the written instrument herein set out and of

the payments made and of the cutting and removal of timber thereunder as hereinbefore set forth, and defendants had no actual knowledge of the transfer of said real property to plaintiffs until the commencement of the action. (Complaint was filed July 20, 1907.) The $5 per year rent mentioned in said instrument has not been tendered or paid except as appears by the following: On May 22, 1907, the Empire Construction Company, at Los Angeles, mailed to C. D. Robinson a check for $5 to pay the rent for the year ending May 20, 1908; this letter was received by F. L. Robinson, grandson of C. D. Robinson, who, on June 15, 1907, wrote the company, returning the check, and stating that C. D. Robinson was dead and that the property in question had changed hands; on July 15, 1907, the company replied asking to be advised if C. D. Robinson's "right to the agreement of sale dated May 20, 1903, given by him to Bender Bros., has been assigned, and if so, to whom, also advise who are his heirs, or name of administrator." On May 11, 1908, the company tendered to plaintiffs $10 in payment of rent reserved in said instrument for the two years beginning May 20, 1907, which was refused, and thereupon the company deposited the amount in the Bank of Point Arena to plaintiffs' credit and so notified them. C. D. Robinson died January 1, 1907.

Upon these facts the court entered judgment for defendant, the Empire Construction Company, adjudging it to be the owner of the timber mentioned in said instrument, with the right to remove the same, and quieting plaintiffs' title subject to such right. Plaintiffs appeal from the judgment on bill of exceptions.

The controversy arises out of the conflicting construction given to the contract of sale by the respective parties. Appellants claim: First: that the agreement conveys "merely a license to cut—'stumpage'—for a determinate amount of time, and if payment is not made at the time fixed the right shall cease, and the time absolutely ceased by failure to make the payments"; Second: "If the instrument must be construed to convey an estate in real property, that such interest is not perpetual, but is simply a determinable fee; in other words, merely conveys a present estate of absolute ownership in the timber, defeasible as to all the timber not removed within the time required by the terms of the instrument."

Respondents' position is, "broadly stated, that Robinson sold and the Benders bought all the timber in controversy for $8,000; that Robinson received and Bender Bros. paid for this timber a price mutually satisfactory; that upon the payment of the purchase price the Benders became the owners of the timber itself; that such ownership gave them an indefeasible interest in the realty in controversy, and that respondent company as the successor of the Benders is the owner of such indefeasible interest in the realty." Furthermore, that such "valuable rights in timber covering 400 acres of land will not be held forfeited in a court of equity for nonpayment of five dollars; that the five-dollar payment provided for in the contract is a reservation of rent and need not be paid until demanded and that Robinson's death excused a tender of this rent."

It seems to us that no very searching analysis of the contract of sale is necessary to justify the conclusion that Robinson not only intended to sell, but did sell, all the timber except that specifically reserved. The condition as to the examination of the title rendered the contract executory but upon full payment made it became an executed sale. Throughout the instrument the language imports a sale of all the timber; the price paid was for all the timber and was equivalent to $20 per acre—certainly on its face an adequate price, as it manifestly was satisfactory to seller and buyer. The property sold is described as "all the timber growing on" the land described, the purchasers "to have the right to cut all the timber growing on said land." The purchasers were given "four years to take said timber off of said land, with privilege of a longer time by paying the sum of five dollars per year rent in advance, for a time not to exceed ten years from date of this agreement," and they were to "peacefully give up all rights and possessions" under the contract "as soon as the timber is all off." It was further provided that the purchasers were to "have ten days time to examine the timber" and also to see "if the titles are all right." Undoubtedly this was to give the purchaser opportunity to estimate the quantity of timber on the entire tract and to determine whether to pay the purchase price for all the timber. We can see no such significance in the use of the word "stumpage" as appellants attach to it—namely—"the right to cut timber,

12 Cal. App.—4

or the price of timber as cut." No inference can reasonably be drawn from the use of this word that the sale was less than of the entire standing timber as it stood, or that the price paid was only "of timber as cut." The word "stumpage" is defined to mean "timber standing in the tree." (*Nitz* v. *Bolton,* 71 Mich. 388, [39 N. W. 15].) "The standing timber on land is commonly called 'stumpage.'" (*Gordon* v. *Grand Rapids & L. R. Co.,* 103 Mich. 379, [61 N. W. 549].) "'Stumpage' is the term used to express the compensation paid by the purchaser for standing timber to be cut and removed by him." (*Baker* v. *Whiting* (U. S.), 2 Fed. Cas. 495, 499.) As used, the word seems not to have any very definite meaning, and it is not to be given a meaning in conflict with other plain provisions of the contract, e. g., where the seller says "I . . . have sold . . . a certain lot of timber growing on my land . . . more particularly described as follows, all the timber on" the land described. The contract contemplated that a longer period than four years might be necessary for the removal of the timber, and hence the provision extending the time not to exceed ten years from the date of the contract. And it is upon this provision appellants rely most confidently, the contention being that the right given (i. e., merely a right to cut timber) was for a limited period, and the privilege of continuing that right depended absolutely upon the prompt payment of $5 on May 20, 1907, failing which, all rights of respondents ceased. The resultant effect, if this be true, is to work a forfeiture of the $8,000 paid as the full value of all the timber and also the right to take possession and remove the property bought. Well-established principles forbid any such inequitable result where the intention of the parties, expressed in their contract, may reasonably be held to be otherwise.

We are asked to import into the contract terms of forfeiture where there is not even a hint that forfeiture was intended and where the seller said he was to have peaceable possession "as soon as the timber is all off." In the case of *Halstead* v. *Jessup,* 150 Ind. 85, [49 N. E. 821], the owner of timber land sold to Halstead the timber thereon, the contract providing that he was "to have four years to take off said oak timber." Halstead sought to remove some of the timber after four years had expired, and was denied the right by Jessup who had acquired title to the land. The suit was to recover

the value of the standing timber. The court said: "The only question between the appellant and the appellee, upon the terms of the contract, was as to the appellant's right, after the expiration of the four years, to go upon the land and take possession of the timber. By the denial of this right, and the retention of the timber, the appellant was certainly damaged to the extent of the value of the timber. The law does not favor forfeitures, and will not enforce them, in the absence of clearly stated conditions of forfeiture. Here, as we have said, there is no stated condition of forfeiture. If by delay in taking the timber after the period named, damage should accrue to the owner of the land, it would not be questioned that such damage could be recovered. But it would be manifestly unjust that mere delay should forfeit both the appellant's money and his timber, and that the appellee should become the owner of the timber upon the strength of an implied forfeiture."

In *Irons* v. *Webb*, 41 N. J. L. 203, [32 Am. Rep. 193], the court held similarly in a similar case and that the provision for removal within two years is a covenant and not a condition. In *Walker* v. *Johnson*, 116 Ill. App. 145, where the timber was not removed within the limited time, the court said: "Under the contract with Abbott, the defendant became the owner of the growing timber, coupled with the right to cut and remove it. This was more than a mere license. It was a substantial part of the thing sold, paid for, and delivered, so far as it was capable of delivery. The time limit for the removal of the timber is to be treated as a covenant and not a condition upon which to base forfeiture."

Our own supreme court has expressed similar views in *Peterson* v. *Gibbs*, 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121]. The facts there so clearly resemble the facts here that we think the principles of law there laid down must rule this case. The only noticeable dissimilarity discoverable is that in the case cited the instrument used the words "grant, bargain and sell," while here the language is "I have sold." But as we think a sale was intended to be made and was in fact made in the present case by the terms of the agreement, the difference between the two instruments in this regard is immaterial. In the case cited the purchaser agreed to pay $200, annually, rental for the privilege of removing the timber after the ten years had expired and also half of the taxes levied upon the land, while here the purchaser agreed to pay the nominal sum

of $5 annually. In the case cited the $200 rental was paid by the purchaser, but he had not paid his half of the taxes. His contract was made in 1887, and the action was brought in 1901—fourteen years later—and yet no timber had been removed. The court said: "While there is much apparent conflict in the decisions as to the proper construction of a contract for the sale of standing trees to be removed, it is well settled that such a sale may be absolute and the agreement to remove within a specified or reasonable time merely a covenant, in which case the timber remains the property of the purchaser, although not removed within the specified time. (See Am. & Eng. Ency. of Law, 2d ed., p. 541; *Hoit* v. *Mills*, 54 N. H. 109, [20 Am. Rep. 119].) The question in each case is what is the contract between the parties. Here there is absolutely nothing in the terms of the agreement which can be construed as making the removal of the timber a condition precedent to the passing of title, or as causing delay in such removal, beyond the period of ten years from the date of the instrument, or failure to pay the rental reserved or one-half the taxes, to operate as a divesting of the title conveyed."

It seems to us that *Peterson* v. *Gibbs* disposes of appellants' contention that the provision for the payment of $5 to secure an extension of the time in which to remove the timber was a privilege given on condition of prompt payment of that sum and that the use of the term "rent" was without significance. The agreement is conceded to have been inartificially drawn. It is not reasonable to suppose that so important a privilege as that of the right to remove the timber which had been fully paid for should depend upon so trifling a circumstance as the prompt payment of $5 per annum. There is nothing in the nature of the transaction to suggest that consequences so serious were intended to be imposed by such failure or that a forfeiture of all rights was to follow. We are not precluded from regarding the use of the term "rent" as having some meaning. It was used probably with as clear a conception of its import as the other provisions in connection with it. We see no reason why we may not interpret the provision to mean that the buyer was to pay $5 per annum in advance as rent for the privilege of cutting timber after four years and before the expiration of ten years. As this was a covenant apart from the sale of the timber and not a condition upon which the sale depended, we are led to the safe conclusion that non-

payment at the appointed hour cannot alone work a forfeiture of all rights under the contract. Regarding the $5 payment as rent, there could be.no forfeiture under this agreement without demand by plaintiff of the rental upon or after the last day given the lessee on which to pay (*Sauer* v. *Meyer*. 87 Cal. 34, [25 Pac. 153]; Civ. Code, sec. 1442; Taylor on Landlord and Tenant, 8th ed., sec. 297; 18 Am. & Eng. Ency. of Law, 2d ed., p. 375) ; and in Cyclopedia, page 1401, the rule is thus stated: "The general rule that to entitle the landlord to enforce a forfeiture for the nonpayment of rent he must make a demand for payment was laid down at an early date and has since been unanimously followed." Respondents suggest, furthermore, that Robinson was dead when the rent fell due, and the lands were then owned by plaintiffs, and there was, therefore, no requirement on defendants' part to perform the idle act of endeavoring to pay rent to a dead man. Respondents also invoke the maxim *de minimis non curat lex*, citing *Mietzsch* v. *Berkhout* (Cal.), 35 Pac. 321, 323. Generally, equity will not relieve where the injury is trifling. (See *Smith* v. *His Creditors*, 59 Cal. 267; *People* v. *Daniels*, 70 Cal. 521, [11 Pac. 655]; Civ. Code, 3533.) It would seem grossly unjust to forfeit rights so valuable for so small a sum as $5, and it is asking much of a court of conscience to do so. We do not, however, believe that the exigencies of the case require resort to this maxim and we do not apply it. If we were to speculate as to the real purpose of this rent clause we should be inclined to think that it was inserted under a misapprehension that without it some sort of a prescriptive right might accrue to defendants.

The judgment was in accord with sound principles, as we think, and it is, therefore, affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 21, 1910.